IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

FREDRICK BENARD MOSLEY,        )
AIS #233819,                   )
                               )
        Plaintiff,             )
                               )
    v.                         )        CASE NO. 2:13-CV-450-MHT
                               )                (WO)
                               )
SGT. DOMINIC JONES, et al.,    )
                               )
        Defendants.            )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.  INTRODUCTION

This case is before the court on a 42 U.S.C. § 1983 complaint filed by Fredrick Benard

Mosley, a state inmate.  In the instant case, Mosley challenges the constitutionality of force used

against him on April 6, 2013 by officers at the Easterling Correctional Facility and the failure of

other officers to protect him from this use of force.  Mosley also alleges that the defendants violated

his right to due process in actions charging him with violations of institutional rules, conspired

against him, deprived him of due process in determining his classification level, failed to

investigate his claims, subjected him to unconstitutional conditions and violated an administrative

regulation.  Mosley names as defendants in this cause of action Dominic Jones, Nathaniel Lawson,

Shawn Logan, Larry Peavy, Derrick Carter, Christopher Scott, Kelvin Teal, Bobby Lingo, Marvin

Scaife and Timmy Adkinson, correctional officials at Easterling; Brian Mitchell, a psychologist;

Sherry A. Lightner and Larry W. Anglin, classification personnel; and the Central Review Board

of the Alabama Department of Corrections.[1]  He seeks a declaratory judgment, injunctive relief and monetary damages for the alleged violations of his constitutional rights. Doc. 1 at 4.  The defendants filed an answer, special report and supporting evidentiary materials, including affidavits and certified prison records, addressing Mosley's claims for relief.  In these documents, the defendants deny the they acted in violation of Mosley's constitutional rights.

After receiving the defendants' special report, the court issued an order directing Mosley to file a response to the report, including affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 25 at 2.  The order specifically cautioned Mosley that "**unless within fifteen (15) days form the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response] and without further notice to the parties (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." Doc. 25 at 2–3.  Pursuant to this order, the court deems it appropriate to treat the defendants' report as a motion for summary judgment.

Upon consideration of the defendants' motion for summary judgment, the evidentiary materials filed in support thereof, the sworn complaint, and the plaintiff's response in opposition to the report, the court concludes that the defendants' motion for summary judgment is due to be DENIED as to the plaintiff's allegations of excessive force and failure to protect lodged against defendants Jones, Peavy, Scott, Adkinson, Teal and Scaife in their individual capacities.  The motion for summary judgment is due to be GRANTED in all other respects.

---

[1] Mosley initially identifies Larry Peavy as "Larry Peavey" but thereafter does not dispute that this individual's true last name is "Peavy" and utilizes the correct spelling in his later filings.  For purposes of this Recommendation, the court will therefore use the correct spelling for this defendant's surname except when quoting from the complaint.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed.R.Civ.P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials, affidavits and statements made under penalty of perjury], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24.

The defendants have met their evidentiary burden.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3); *Jeffery*, 64 F.3d at 593–94 (holding that, once the moving party meets its burden, the opposing "party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and

admissions on file," demonstrate that there is a genuine dispute of material fact). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering disposition of a case on summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when a party produces evidence that would allow a reasonable factfinder to return a verdict in its favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Educ. for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the plaintiff and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After this review, the court finds that Mosley, through the submission of his sworn complaint, the evidentiary materials submitted in support thereof and his responses to the defendants' report, has demonstrated a genuine dispute of material fact in order to preclude entry of summary judgment on his excessive force and failure to protect claims presented against defendants Jones, Peavy, Scott, Adkinson, Teal and Scaife in their individual capacities. The defendants, however, are entitled to summary judgment on Mosley's remaining claims for relief.

## III.  DISCUSSION

### A.  Relevant Facts[2]

On April 6, 2013, Mosley finished eating the mid-day meal and complained to defendant Bobby Lingo that he was still hungry.  Lingo granted Mosley permission to receive extra food and he obtained the same from the kitchen staff.  Mosley then concealed a bologna sandwich in his clothing and exited the dining hall.  Food taken from the dining hall without permission is considered contraband.   Because of information provided by Lingo, correctional officers confronted Mosley, counseled him about his violation of the rules and advised him that he would be moved to Dorm C1, the Restricted Privileges Dorm.  Mosley refused orders to enter Dorm C1 and grabbed a table to prevent his placement in this dorm.  A struggle ensued with defendants Jones and Peavy.  As best the court can discern, Mosley alleges that "[Dominic] Jones grabbed me [by] my neck, start[ed] [choking] me. . . . Officer Scott . . . ran over there pull me to the ground. Lt. Larry Peavey put his boots on my neck.  Sgt. Jones Dominic put me [in] handcuffs[,] tighten them up so tight bend my arm up . . . [then] jerk[ed] [on the] handcuffs. . . .  When I get [to] Seg-B-B door, Jones . . . running, rammed my head [in] the door [4 or 5] times.  I was [being] kick[ed] in thigh by Larry Peavey. . . .   Jones slapping [me] in back of my head about 26x time[s], Larry Peavey [was] kicking my arm.  They pick me up took me in the segregation room [where] Jones start punch[ing] me in my chest [until I was out of breath gasping] for air.  Larry Peavey pull[ed] out his stick put [it] in back [of] me between my handcuffs [and] jerk[ed] on handcuffs."  Doc. 1 at 10–11.  During various periods of the alleged assault, defendants Scott, Adkinson, Teal and

---

[2] The facts are gleaned from the complaint, the attachment to the complaint, and the undisputed evidentiary materials. At this stage of the proceedings, the facts are viewed in a light most favorable to the plaintiff. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (holding that all evidence "must be viewed in the light most favorable to the opposing party" when addressing a party's motion for summary judgment).

Scaife observed the acts of physical abuse but failed to intervene on Mosley's behalf.  Doc. 1 at 8–10.

Mosley incurred disciplinary charges for failure to obey a direct order and assault on a correctional officer for his actions related to the altercation on April 6, 2013. Doc. 23-15 at 10–20. Correctional officials also issued a behavior citation to Mosley for possession of contraband due to his exiting the dining hall with a sandwich. Doc. 23-15 at 8–9.  On April 7, 2013, Officer Munchie Keaton served Mosley with notice of the disciplinary charges and the scheduled date for the disciplinary hearings related to these charges.  Keaton provided Mosley the opportunity to identify witnesses but Mosley signed the form indicating that he did not desire any witnesses.  Doc. 23-15 at 10 & 18.  Mosley signed the materials acknowledging receipt of service of the disciplinary charges.  At this same time, Keaton also served Mosely with notice of the behavior citation.

During the disciplinary hearings, Mosley provided the hearing officer, defendant Shawn Logan, with a list of potential questions addressing the assault charge.  Logan asked the questions he deemed relevant to the charge pending against Mosley.  Mosley also posed questions to the arresting officer, Dominic Jones, and was given the opportunity to testify on his own behalf and present evidence. Doc. 23-15 at 10–20.  Upon completion of the disciplinary hearings, Logan found Mosley guilty of failing to obey a direct order and assault on a person associated with the Department of Corrections. Doc. 23-15 at 12 & 20.  The sanctions imposed upon Mosley for these disciplinary infractions consisted of the loss of canteen, telephone and visitation privileges for forty-five days. Doc. 23-15 at 12 & 20.  With respect to the behavior citation, defendant Nathaniel Lawson approved the citation and imposed the recommended sanctions of a thirty-day loss of canteen, telephone and visitation privileges. Doc. 23-15 at 8.

Mosley complains that he was denied due process both during the proceedings related to

these actions and when classification personnel increased his classification level to close custody due to his violations of institutional rules.  Mosley also makes conclusory allegations regarding use of heaters in the facility from the date of the incident until sometime in July of 2013, the presence of rats in all areas of the prison, and perceived oil in the water.  Mosley further complains that defendants Carter and Lawson failed to properly investigate his altercation with correctional officers and denied him the opportunity to make a written statement on the date of the incident in violation of Administrative Regulation No. 403, which governs procedures for rule violations. Finally, Mosley alleges that the defendants engaged in a conspiracy to conceal their violations of his constitutional rights.

**B.    The Central Review Board**

Mosley names the Central Review Board of the Alabama Department of Corrections as a defendant in this cause of action.  The claims against the Central Review Board relate to the increase in his classification level.

The law is well-established that a state agency, department or internal board thereof, as an extension of the State, is absolutely immune from suit. *Papasan v. Allain*, 478 U.S. 265 (1986) (holding that unless the State, its agency, or board consents to suit, the plaintiff cannot proceed against the respective defendant because the action is proscribed by the Eleventh Amendment, and "[t]his bar exists whether the relief sought is legal or equitable").  In addition, an internal department board is "not a 'person within the meaning of § 1983," and therefore is not subject to liability in a 42 U.S.C. § 1983 action. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65 (1989).  Moreover, as determined herein, Mosley has no constitutional right to a particular custody classification.  Any claims lodged against the Central Review Board of the Alabama Department of Corrections are therefore frivolous as they are "based on an indisputably meritless legal theory."

*Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

**C.     Absolute Immunity**

With respect to those claims lodged against the individual defendants in their official capacities, they are immune from monetary damages.  Official-capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, or Congress has abrogated the state's immunity. Alabama has not waived its Eleventh Amendment immunity, and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997) (citing *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984); *Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996); and *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990)).

In light of the foregoing, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Ga. Dept. of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

**D.     Due Process**

Mosley challenges the due process afforded him during the proceedings related to the disciplinary actions and behavior citation.  For instance, Mosley alleges that (1) Officer Munchie Keeton, the serving officer, did not allow him to list witnesses; (2) Lieutenant Shawn Logan, the hearing officer, found him guilty despite his presentation of evidence contradictory to that of the arresting officer; and (3) Warden Derrick Carter approved the disciplinary findings without a

proper investigation.  Under the circumstances of this case, Mosley's due process claims entitle him to no relief.

Determining whether an inmate has been "deprived of 'liberty' within the" scope of the Due Process Clause "is often a difficult determination . . . because prisoners have *already* been deprived of their liberty in the ordinary sense of the term." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).  The Supreme Court has nevertheless identified two circumstances in which a prisoner can be further deprived of his liberty such that due process is required.

> The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. *Sandin v. Conner,* 515 U.S. 472, 484, 115 S. Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 492–93, 100 S. Ct. 1254, 1263–64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital).  The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S. Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory "good-time credits" without due process); *cf. Dudley v. Stewart,* 724 F.2d 1493, 1497–98 (11th Cir. 1984) (explaining how the state creates liberty interests).  In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state.

*Bass*, 170 F.3d at 1318.

The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement. *Sandin*, 515 U.S. at 485–86 (noting temporary confinement of inmate in disciplinary segregation does not implicate a constitutionally protected liberty interest); *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005) ("The punishments [the plaintiff-inmate] suffered because of his disciplinary conviction (demotion in status, segregation, and transfer) raise no due process concerns."); *Meachum v. Fano,* 427 U.S. 215, 225 (1976) (holding no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison

because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose"); *Olim v. Wakinekona*, 461 U.S. 238, 245–46 (1983) (holding prisoner has no constitutional right to be confined in a particular institution).  Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in the privileges bestowed upon him or confinement in the least restrictive prison environment because the resulting restraints are not so severe that they exceed the sentence imposed upon him. *Sandin*, 515 U.S. at 485 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law.").  In addition, a temporary denial of privileges does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484.  Thus, the deprivations imposed upon Mosley based on the challenged disciplinary actions and behavior citation did not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Id*.

This court must therefore determine whether the actions about which Mosley complains involved the deprivation of a state-created liberty interest as defined by the standard set forth in *Sandin*.  As the Supreme Court later opined,

> *Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior.  *Sandin* observed that some of our earlier cases, *Hewitt v. Helms*, 459 U.S. 460, 103 S. Ct. 864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." *Sandin,* 515 U.S., at 481, 115 S. Ct. 2293.  In *Sandin,* we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. *Id.* at 482–83, 115 S. Ct. 2293.  For these reasons, we abrogated the methodology of parsing the language of particular regulations.
> "[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty

> protected by the Due Process Clause.  The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum.*   Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause.  But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 483–84, 115 S. Ct. 2293 (citations and footnote omitted).
>
> After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life." *Id.* at 484, 115 S. Ct. 2293.

*Wilkinson v. Austin,* 545 U.S. 209, 222–23 (2005).  More specifically, "[w]ith respect to [Plaintiff's] loss of canteen, telephone, and visiting privileges, a liberty interest is not implicated either under the Constitution or by the State's creation.  The Court finds the Constitution does not grant an inmate a right in visitation, canteen, and telephone privileges." *Bass*, 2015 WL 4742473, at *5 (citations omitted).

Applying the *Sandin* inquiry, it is clear that the temporary loss of canteen, telephone and visitation privileges "though concededly punitive, do[] not represent a dramatic departure from the basic conditions" of the sentence imposed upon the plaintiff. *Sandin*, 515 U.S. at 485.  In light of the foregoing, the court concludes that the aforementioned sanctions fail to "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.  Consequently, due process did not attach to the disciplinary or behavior citation proceedings and summary judgment is due to be granted in favor of the defendants on the due process claims.

## E.   Classification

Mosley challenges his placement in close custody.  This claim, however, provides no basis for relief.  An inmate in the Alabama prison system has no constitutionally protected interest in

the procedure affecting his classification because the resulting restraint, without more, does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (holding that inmate has no constitutionally protected liberty interest in a particular custody classification). Thus, Mosley has no constitutionally protected interest in remaining in a particular custody classification, and any claim to the contrary is without merit.

## F.    Conditions

Mosley makes a number of allegations with respect to the conditions at Easterling. Specifically, Mosley alleges that the heating system operated during the summer months, the water contained oil, and rats roamed all areas of the prison.  The defendants respond that Mosley "has failed to show an 'objective' violation of the Eighth Amendment.  He has failed to allege the deprivation of a single identifiable [essential] need[.]  The Plaintiff's claims do not rise to the level of a constitutional violation." Doc. 23 at 22.

Only actions that deny inmates "the minimal civilized measure of life's necessities" are grave enough to establish constitutional violations.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Specifically, the Eighth Amendment is concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Id*. at 348 (citation omitted).  As the Supreme Court has held:

> The Constitution "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349, . . . (1981), but neither does it permit inhumane ones, and it is now settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," *Helling [v. McKinney]*, 509 U.S. [25], 31 [1993].  In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners. . . .  The Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive

> adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates," *Hudson v. Palmer*, 466 U.S. 517, 526-527. . . (1984).

*Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

If prison conditions are merely "restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347.  Generally, prison conditions rise to the level of an Eighth Amendment violation only when they "involve the wanton and unnecessary infliction of pain." *Id.*; *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004).  "[T]he Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes, cannot be free of discomfort." *Rhodes*, 452 U.S. at 349.  "[A] prisoner's mere discomfort, without more, does not offend the Eighth Amendment." *Crosby*, 379 F.3d at 1296.

To demonstrate an Eighth Amendment violation regarding conditions of confinement, a prisoner must satisfy both objective and subjective elements. *Farmer*, 511 U.S. at 834.  With respect to the requisite objective elements, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed].  Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001) (en banc), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  As to the subjective elements, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . .  The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual

'punishments.' . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837–38 (internal citations omitted); *Campbell v. Sikes*, 169 F.3d 1353, 1370 (11th Cir. 1999) ("[P]roof that the defendant should have perceived the risk but did not is insufficient.").

The living conditions within a correctional facility will constitute cruel and unusual punishment only when the conditions involve or result in "wanton and unnecessary infliction of pain, [or] . . . [are] grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes*, 452 U.S. at 347. "Conditions . . . alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities. Such conditions could be cruel and unusual under the contemporary standard of decency. . . . But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." *Id*. at 347. In determining whether conditions of confinement constitute cruel and unusual punishment, the court must look to the effect the condition has upon the inmate. *Id*. at 366. In a case involving conditions of confinement generally or several different conditions, the court should consider whether the claims together amount to conditions which fall below constitutional standards. *Hamm v. De Kalb County*, 774 F.2d 1567 (11th Cir. 1985), *cert. denied* 475 U.S. 1096 (1986); *see also Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991).

Mosley has failed to present any evidence that the conditions about which he complains presented a severe or extreme condition that posed an unreasonable risk of serious damage to either his health or safety. *See Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (holding that a prisoner must prove that the prison condition he complains of is sufficiently serious and "extreme" to violate the Eighth Amendment). In addition, Mosley has not alleged that he suffered any

14

specific harm as a result of the conditions referenced in the complaint. Mosley's mere subjective beliefs and conclusory allegations regarding the constitutionality of these conditions do not create a genuine dispute of material fact, and "are insufficient to withstand summary judgment." *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997). Accordingly, the court concludes that the alleged unconstitutional conditions do not rise to the level of an Eighth Amendment violation. *Alfred v. Bryant*, 378 F. App'x 977, 980 (11th Cir. 2010) ("'Inmates cannot expect the amenities, conveniences and services of a good hotel.'") (quoting *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988)).

Based on the foregoing, the court finds that the challenged conditions though potentially uncomfortable, inconvenient, unpleasant or objectionable were not so extreme as to violate the Eighth Amendment. Even when viewing the totality of the allegations made by Mosley, these claims do not amount to conditions that fall below applicable constitutional standards since Mosley fails to demonstrate that the challenged conditions had "a mutually enforcing effect that produce[d] the deprivation of a single, identifiable human need." *Wilson*, 501 U.S. at 304. Consequently, summary judgment is due to be granted in favor of the defendants on the conditions claims.

To the extent the allegations set forth in the complaint can be construed to allege a claim of deliberate indifference to Mosley's health or safety arising under the Eighth Amendment, this claim likewise fails. Mosley sets forth only conclusory allegations regarding conditions at Easterling and fails to identify any particular incident or condition of which the defendants were aware and from which an inference could be drawn that a substantial risk of serious harm existed. *Carter*, 352 F.3d at 1350 ("Plaintiff has failed to establish that the Defendant[s] had a subjective awareness of a substantial risk of serious physical [harm] to Plaintiff; thus, Plaintiff has failed to establish a required element of this claim."). Moreover, the record is devoid of any evidence

showing that the defendants drew the requisite inference and thereafter ignored the risk.  Mosley

has therefore failed to establish each of the requisite elements of deliberate indifference.

Consequently, summary judgment is due to be granted in favor of the defendants on any claim of

deliberate indifference.

**G.     Violation of Administrative Regulation**

Insofar as Mosley asserts that the defendants violated Administrative Regulation No. 403

with respect to the proceedings surrounding the disciplinary actions and behavior citation, he is

entitled to no relief.  As previously determined, due process did not attach to the disciplinary or

citation proceedings.  Infringements of agency rules, regulations or procedures simply do not,

without more, amount to constitutional violations. *Sandin*, 515 U.S. at 484–86; *United States v.*

*Caceres,* 440 U.S. 741, 751-752 (1979) (holding that mere violations of agency regulations do not

raise constitutional questions); *Magluta v. Samples,* 375 F.3d 1269, 1279 n. 7 (11th Cir. 2004)

(holding that mere fact governmental agency's regulations or procedures may have been violated

does not, standing alone, raise a constitutional issue); *Myers v. Klevenhagen,* 97 F.3d 91, 94 (5th

Cir. 1996) (holding that claim that prison officials have not followed their own policies and

procedures does not, without more, amount to a constitutional violation).  For these reasons, the

defendants are entitled to summary judgment on this claim.

**H.     Lack of Adequate Investigation**

Mosley maintains that defendants Carter, Lawson and Logan deprived him of due process

when they failed to investigate adequately the actions of correctional officers underlying the

disciplinary charges and behavior citation lodged against him.  This allegation, however, fails to

state a claim cognizable in this cause of action.

"It is well-settled that § 1983 does not create a federal right or benefit; it simply provides

a mechanism for enforcing a right or benefit established elsewhere." *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). "The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 196 (1989). "The law is clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials." *Banks v. Annucci*, 48 F. Supp. 3d, 394, 414 (N.D.N.Y. 2014); *Wilkins v. Illinois Dept. of Corrections*, 2009 WL 1904414, *9 (S.D. Ill. 2009) ("Because inmates do not have a due process right to [an investigation] at all, an allegation that any investigation which is actually conducted by prison officials was 'inadequate' or 'improper' does not state a constitutional claim."); *see also Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) (holding that prisoners do not have a due process right to an investigation of grievances). Based on the foregoing, the court concludes that the alleged lack of an adequate investigation does not rise to the level of a constitutional violation, and therefore this claim provides Mosley no basis for relief.

## I.    Excessive Force and Failure to Protect

### *1.    Qualified Immunity.*

With respect to Mosley's excessive force and failure to protect claims against defendants Jones, Peavy, Scott, Adkinson, Teal and Scaife in their individual capacities, the defendants argue they are entitled to qualified immunity. The basic framework for the court's analysis of these claims is well established:

> Under the doctrine of qualified immunity, if the defendant establishes that he was acting within the scope of his discretionary authority when the alleged excessive force occurred, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. *Skop* [*v. City of Atlanta*, 485 F.3d 1130, 1136–37 (11th Cir. 2007)]. To defeat qualified immunity, a plaintiff must show both that a

> constitutional violation occurred and that the constitutional right violated was clearly established. *Fennell* [*v. Gilstrap*, 559 F.3d 1212, 1216 (11th Cir. 2009)]. In Eighth Amendment excessive force cases, however, "the subjective element required to establish [the constitutional violation] is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution." *Johnson v. Breeden*, 280 F.3d 1308, 1321–22 (11th Cir. 2002).

*Bowden v. Stokely*, 576 F. App'x 951, 954-55 (11th Cir. 2014). "Moreover, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance." *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002). "While . . . there is no per se rule barring qualified immunity in Eighth Amendment cases, where the plaintiff has sufficiently alleged or shown a material dispute of fact as to an excessive force claim, summary judgment based on qualified immunity is not appropriate." *Bowden*, 576 F. App'x at 956 (citing *Skrtich*, 280 F.3d at 1301). Accordingly, this court will consider whether the plaintiff's allegations that Jones and Peavy maliciously and sadistically used excessive force against him while Scott, Adkinson, Teal and Scaife witnessed the attack and failed to intervene—which the court must take as true for purposes of summary judgment—sets forth a violation of his Eighth Amendment rights.

### 2. *Excessive Force and Failure to Protect*

Claims of excessive force by correctional officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson*, 503 U.S. at 8. The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id*. (internal quotations omitted). With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional

violation." *Id*.  In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id*. at 4. "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts.  An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).  However,

> [t]his is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry.  [*Hudson*, 503 U.S.] at 7, 112 S. Ct. (1992).  "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Ibid*. (quoting *Whitley*, 475 U.S. at 321, 106 S. Ct. 1078).  The extent of injury may also provide some indication of the amount of force applied.

*Wilkins*, 559 U.S. at 37.  Moreover, "the relatively modest nature of [an inmate's] alleged injuries will no doubt limit the damages he may recover [if ultimately successful on his claims]." *Id*. at 40.

In this context, not every use of force will support a cause of action, as "force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm.'" *Skrtich*, 280 F.3d at 1300 (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986).  "To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: 'the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.'" *Skrtich*, 280 F.3d at 1300 (citing *Hudson*, 503 U.S. at 7–8).

Mosley alleges that on April 6, 2013 defendants Jones and Peavy used excessive force against him.  In support of this claim, Mosley contends that after he refused several orders to enter

Dorm C1 and grabbed a table to prevent placement in this dorm, defendant Jones began choking him for no reason.   Mosley further complains that after he assumed a defenseless position defendant Peavy kicked him several times.   Mosley also asserts that defendant Jones, while escorting him to the segregation dorm, continuously struck him in the back of the head and repeatedly rammed his head into the outside door of Dorm B causing white paint marks to appear on his forehead.   Finally, Mosley complains that when the officers placed him in a room in the segregation unit Jones continually punched him in the chest until he could not breath while Peavy placed a baton between his handcuffs and applied immense pressure.

Within minutes of the incident, Officer Jimmy Wilson escorted Mosley to the Health Care Unit for evaluation.   Nurse Mayrena Junghans examined Mosley and obtained his vital signs which included a blood pressure ("B/P") reading of 170/130. Doc. 23-15 at 6.   She determined that Mosley appeared alert and oriented to person, place and time. Doc. 23-15 at 6.   Nurse Junghans also noted "2 white areas . . . to [left] side of [Mosley's] forehead.   [No] redness or bruises noted. Denies injuries.   B/P check ordered [due to elevated] B/P." Doc. 23-15 at 6.   Nurse Junghans found no injuries in need of treatment and released Mosley to correctional officials for his return to the dorm.   Photographs taken of Mosley immediately after the incident do not indicate any visible physical injury but do depict the white marks on the left side of Mosley's forehead. Doc. 23-15 at 4.

The defendants adamantly deny Mosley's claims regarding the use of excessive force and the alleged failure to protect him from such force.   Specifically, defendant Jones addresses Mosley's allegations as follows:

> On April 6, 2013, I, Sgt. Dominic Jones, was assigned as an Assistant Shift Commander for Day A Shift at Easterling Correctional Facility.   At approximately 2:00 PM, I ordered Inmate Frederick Mosley . . . to pack his property and to move

to Dormitory C1, Restricted Privileges Dormitory.  Inmate Mosley had been caught attempting to take a bologna sandwich out of the chow hall.  Inmate Mosley refused to move to Dormitory C1.  Lt. Larry Peavy and I exited the Shift Commander's Office and escorted Inmate Mosley to Dormitory C1 Lobby area.  Inmate Mosley refused again to enter Dormitory C1.  Inmate Mosley stated that he was not going to go inside Dormitory C1.  I grasped Inmate Mosley by one arm and Lt. Peavy grasped his other arm and we escorted Inmate Mosley inside of the dormitory.  I was attempting to exit Dormitory C1, and I observed Inmate Mosley draw back his clenched fist and swing at me.  I stepped back to elude his punch.  I placed Inmate Mosley on the wall, and placed handcuffs on both of his wrists.  Lt. Peavy and I escorted Inmate Mosley to the Segregation Unit.  Inmate Mosley was processed into Administrative Segregation, pending disciplinary action for Assault on a DOC Official and Failure to Obey a Direct Order.  At no time was there any excessive force used on Inmate Mosley.

Doc. 23-5.  Defendant Peavy provides the following information in response to Mosley's excessive force claim:

On April 6, 2013, I, Lt. Larry Peavy, was assigned as the Shift Commander for Day A Shift at Easterling Correctional Facility.  At approximately 2:00 PM, I observed Sgt. Dominic Jones order Inmate Frederick Mosley . . . to pack his property and prepare to move to Dormitory C1, Restricted Privileges Dorm.  Inmate Mosley stated that he was not going to move.  At this time, Sgt. Jones and I exited the Shift Commander's Office and escorted Inmate Mosley to the lobby area of Dormitory C.  Once we got to the door of Dormitory C1, Inmate Mosley again stated that he was not going to go inside of Dormitory C1.  I grasped Inmate Mosley by one arm and Sgt. Jones grasped his other arm and we escorted him inside of the dormitory.  Once we got ready to exit Dormitory C1, Inmate Mosley drew back his fist and swung at Sgt. Jones.  Sgt. Jones placed handcuffs on Inmate Mosley.  Sgt. Jones and I then escorted Inmate Mosley to the Segregation Unit.  I reported the incident to Warden II Kenneth Sconyers, via telephone.  Inmate Mosley was examined by Nurse Mayrena Junghans, no injuries were noted on the medical chart.  Officer Kelvin Teal took photographs of Inmate Mosley.  Inmate Mosley was processed into Administrative Segregation, pending disciplinary action for Assault on a DOC Official and Failure to Obey a Direct Order.  At no time was any excessive force used on Inmate Mosley.

Doc. 23-3.  With respect to Mosley's failure-to-protect claims, defendants Scott, Adkinson, Teal and Scaife aver that they did not witness any improper use of force against Mosley, and thus there was no need for their intervention to protect Mosley. Docs. 23-7 to 23-10.

Even though the defendants dispute the version of events presented by Mosley, the court

is required at this stage of the proceedings to view the facts in the light most favorable to Mosley and draw all reasonable inferences from those facts in his favor. *Bradley v. Franklin Collection Service, Inc.*, 739 F.3d 606, 608 (11th Cir. 2014). Mosley has alleged that defendants Jones and Peavy choked, slapped, punched, jerked and kicked him without provocation and while he posed no threat to them or the security of the facility. Mosley further asserts that defendants Scott, Adkinson, Teal and Scaife witnessed the use(s) of force without intervening to protect him from defendants Jones and Peavy. Finally, Mosley contends that the challenged actions caused a dangerous elevation of his blood pressure and marks on his arms. In sum, Mosley contends "that he was the victim of an unprovoked attack in circumstances that did not [warrant the amount of force used]. . . . This version of the events could support an excessive force claim despite the lack of serious injuries." *Bowden*, 576 F. App'x at 954.

As previously explained, the defendants deny Mosley's allegations regarding the use of excessive force and maintain that at no time during the incident was more force used than necessary to subdue and gain control of Mosley after he repeatedly refused orders to enter Dorm C1 and thereafter attempted to strike defendant Jones with a closed fist. Nevertheless, viewing the facts in the light most favorable to Mosley, the court concludes that defendants Jones, Peavy, Scott, Adkinson, Teal and Scaife are not entitled to qualified immunity as the plaintiff has alleged facts sufficient to survive their motion for summary judgment regarding the excessive force and failure to protect claims lodged against them. *See Skrtich*, 280 F.3d at 1301. Specifically, disputed issues of material fact exist regarding the need for the use of force, the nature of the force used, whether defendants Jones and Peavy acted "maliciously and sadistically" to cause harm, and whether defendants Scott, Adkinson, Teal and Scaife failed to intervene when faced with circumstances which warranted intervention. Consequently, the motion for summary judgment with respect to

the claims of excessive force and failure to protect lodged against defendants Jones, Peavy, Scott, Adkinson, Teal and Scaife is due to be denied.

**J.     Conspiracy**

### 1.     Civil Conspiracy Claim

Mosley makes the specious and unsupported allegation that the adverse actions about which he complains resulted from a conspiracy among the defendants to deprive him of his constitutional rights.  The defendants deny engaging in any conspiratorial acts against Mosley. The evidentiary materials filed by the defendants establish that the behavior citation and disciplinary actions issued to Mosley resulted from Mosley's violations of institutional rules— failure to obey a direct order, assault on a correctional officer and possession of contraband.

Undeniably, "[c]onspiring to violate another person's constitutional rights violates section 1983." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002) (citations omitted). To proceed on a conspiracy claim under 42 U.S.C. § 1983, "a plaintiff 'must show that the parties "reached an understanding" to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy.' . . . [T]he linchpin for conspiracy is agreement." *Bailey v. Bd. of County Comms. of Alachua County*, 956 F.2d 1112, 1122 (11th Cir.), *cert. denied,* 506 U.S. 832 (1992) (quoting *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990), *cert. denied,* 500 U.S. 932 (1991)).  In order for a plaintiff "to establish the 'understanding' or 'willful participation' required to show a conspiracy, . . . [he] must [produce] some evidence of agreement between the defendants." *Rowe*, 279 F.3d at 1283-1284.  Merely "stringing together" acts of individuals is insufficient to demonstrate the existence of a conspiracy. *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992).

Other than his conclusory allegation of a conspiracy, Mosley presents nothing to establish

an actual conspiracy to deprive him of his constitutional rights.  Accordingly, the court concludes that Mosley's bare allegation of a conspiracy is insufficient to support a claim for relief in this 42 U.S.C. § 1983 action. *See Harvey*, 949 F.2d at 1133; *Fullman*, 739 F.2d at 556–57.

### 2.      Potential Claims Under 18 U.S.C. § 241 and § 242

To the extent the complaint can be construed to seek relief for alleged criminal actions purportedly committed in violation of his constitutional rights as prohibited by 18 U.S.C. § 241 and § 242, this request for relief is likewise subject to summary dismissal.  "Title 18 U.S.C. § 241 is a statute that criminalizes conspiracies against a person's rights under the Constitution or laws of the United States.  There is no private right of action under this criminal statute." *Gipson v. Callahan*, 18 F.Supp.2d 662, 668 (W.D.Tex 1997) (citations omitted); *Rockefeller v. United States Court of Appeals Office for Tenth Cir. Judges*, 248 F. Supp. 2d 17, 23 (D.D.C. 2003) (holding plaintiff foreclosed "from asserting claims pursuant to 18 U.S.C. §§ 242 and 371 because, as criminal statutes, they do not convey a private right of action").  Thus, Mosley's claims arising under these criminal statutes provide no basis for relief.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.      The defendants' motion for summary judgment (Doc. 23) be GRANTED in part and DENIED in part, as follows:

  a.  The defendants' motion for summary judgment with respect to the plaintiff's claims for monetary damages lodged against them in their official capacities be GRANTED and these claims be DISMISSED with prejudice as the defendants are entitled to absolute immunity from such damages.

  b.  The defendants' motion for summary judgment as to the plaintiff's due process,

classification, conditions, administrative regulation, lack of investigation and conspiracy claims presented against them in all aspects of their individual capacities be GRANTED and these claims be DISMISSED with prejudice.

c. Defendants Nathaniel Lawson, Shawn Logan, Larry Anglin, Derrick Carter, Sherry Lightner, Brian Mitchell, Bobby Lingo and the Central Review Board be DISMISSED as parties.

d. The motion for summary judgment filed on behalf of defendants Dominic Jones, Larry Peavy, Christopher Scott, Timmy Adkinson, Kelvin Teal and Marvin Scaife with respect to the plaintiff's excessive force and failure to protect claims lodged against these defendants in their individual capacities be DENIED.

2. This case be referred to the undersigned for an evidentiary hearing and other appropriate proceedings on the plaintiff's surviving claims of excessive force and failure to protect presented against defendants Dominic Jones, Larry Peavy, Christopher Scott, Timmy Adkinson, Kelvin Teal and Marvin Scaife.

It is further ORDERED that on or before **September 5, 2016** the parties may file objections to the Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149

(11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 15th day of August, 2016.

<u>          /s/ Gray M. Borden          </u>
UNITED STATES MAGISTRATE JUDGE